UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELVIN WILLIS,

    Petitioner,

v.

CONNIE HORTON,

    Respondent.
_____/

Case No. 2:20-cv-10176

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

### OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS; (2) DENYING CERTIFICATE OF APPEALABILITY; AND (3) DENYING PERMISSION TO APPEAL *IN FORMA PAUPERIS*

#### I. INTRODUCTION

Kelvin Willis ("Petitioner"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Petitioner was convicted following a jury trial in the Wayne Circuit Court of child sexually abusive activity, Mich. Comp. Laws § 750.145c(2), possession of less than twenty-five grams of cocaine, Mich. Comp. Laws § 333.7403(2)(a)(v), and disseminating sexually explicit material, Mich. Comp. Laws § 722.675. He was sentenced to a controlling term of 15 to 40 years for the child sexually abusive activity conviction and lesser concurrent terms for his other convictions.

The present habeas petition raises four claims: (1) insufficient evidence was presented at trial to sustain Petitioner's child sexually abusive activity conviction; (2) the trial court was biased against Petitioner; (3) the child sexually abusive activity statute requires the prosecutor to prove that Petitioner intended to produce child sexually abusive material; and (4) the trial court failed to instruct the jury on the requirement that Petitioner acted with the purpose to produce child sexually abusive material. For the reasons that follow, the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

## II. BACKGROUND

The Court recites verbatim the relevant facts regarding Petitioner's conviction from the Michigan Court of Appeals' opinion, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1), *see e.g. Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> The 52-year-old defendant's convictions arise from his interaction with his neighbor, a 16-year-old male, in defendant's Dearborn apartment on August 12, 2015. The prosecution presented evidence that defendant spoke to the victim outside, asked the victim his age, and then invited the victim into his apartment. While inside defendant's apartment, the victim sat on the couch, defendant put his arm around the victim, and defendant used his cell phone to show the victim a video of two men engaging in sexual intercourse. Defendant offered the victim $25 if he would allow defendant to insert his fingers in the victim's anus and masturbate on the victim, and defendant later offered the victim $100 to engage in sexual intercourse. The victim declined both offers, and thereafter, when defendant briefly left the apartment, the victim fled and reported the incident to a neighbor. The neighbor contacted police, and officers arrested defendant. During an inventory search, officers

found cocaine in the pocket of defendant's pants. At trial, defendant denied any wrongdoing and asserted that the testimony of the victim and the police was inconsistent and not credible.

*People v. Willis*, 914 N.W.2d 384, 386–87 (Mich. Ct. App. 2018).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate counsel filed a brief on appeal that raised three claims:

> I. Petitioner's due process rights were violated when he was convicted of child sexually abusive activity without sufficient evidence to prove the offense beyond a reasonable doubt.
>
> II. Petitioner was denied a fair trial by the court's denigration of the defense and defense counsel and showed a partiality towards the prosecution.
>
> III. Petitioner is entitled to resentencing because the minimum term was an unreasonable and disproportionate upward departure from the recommended guidelines range.

The Michigan Court of Appeals affirmed Petitioner's conviction in a published opinion. *See id.*

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court that raised two claims:

> I. Petitioner's due process rights were violated when he was convicted of child sexually abusive activity without sufficient evidence to prove the offense beyond a reasonable doubt when the court gave the jury a non-standard instruction.
>
> II. Petitioner was denied a fair trial by the court's denigration of the defense and defense counsel and showed a partiality towards the prosecution.

3

The Michigan Supreme Court issued an order asking for supplemental briefing pertinent to what now form Petitioner's present first, third, and fourth habeas claims in this Court:

> The appellant shall file a supplemental brief within 42 days of the date of this order addressing: (1) whether, to sustain a conviction under MICH. COMP. LAWS § 750.145c(2), the prosecution must prove that the defendant acted for the purpose of producing or making child sexually abusive material; and (2) whether the evidence in this case was sufficient to support the defendant's conviction for child sexually abusive activity, MICH. COMP. LAWS § 750.145c(2).

*People v. Willis*, 920 N.W.2d 566 (Mich. 2018) (mem.).

Following additional briefing, the Michigan Supreme Court denied the application for leave to appeal in a 5-2 order. *People v. Willis*, 931 N.W.2d 1 (Mich. 2019). The court's majority found that the plain language of the statute did not require the prosecutor to prove that Petitioner engaged in child sexually abusive activity with the purpose of producing child sexually abusive material. *Id*. at 1–3. The court, however, flagged the case for Michigan's Legislature, noting that statute appeared discordant with the rest of Michigan's criminal sexual conduct laws that generally made sixteen years old the age of consent. *Id.* at 2.

### III. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

4

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long

as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

## IV. ANALYSIS

### A. *Mens Rea* Requirement for Mich. Comp. Laws § 750.145c(2)

Petitioner's first, third, and fourth habeas claims are closely related. In his first claim, which he previously presented to the Michigan Court of Appeals, he argues that insufficient evidence was presented at trial to sustain his conviction for child sexually abusive activity. Specifically, he argues that no evidence was presented to prove that his conduct with the complainant was done for the purpose of producing child sexually abusive material. The Michigan Court of Appeals rejected the premise on which the claim was made. The court held that such a purpose was not an element of the offense, so the prosecutor was not required to produce evidence of that purpose. Petitioner's third and fourth claims, which were

6

also presented to the Michigan Supreme Court upon additional briefing, assert that the statute should be interpreted as requiring that the child sexually abusive activity be done for such a purpose, and that the trial court erred in omitting that element from the jury instructions.

On direct appeal, the Michigan Court of Appeals undermined the premise of Petitioner's sufficiency of the evidence claim by finding that an intent to produce child sexually abusive material was not an element of the offense of child sexually abusive activity:

> Initially, we reject defendant's claim that MICH. COMP. LAWS § 750.145c is limited to criminalizing conduct involving the production of child sexually abusive material. Whether conduct falls within the scope of a criminal statute, in this case MICH. COMP. LAWS § 750.145c(2), is a question of statutory interpretation that we review de novo. *People v. Hill*, 486 Mich. 658, 667-668 (2010). When construing a statute, our primary goal is to ascertain and give effect to the intent of the Legislature. *People v. Perry*, 317 Mich. App. 589, 604 (2016). To that end, we begin by examining the plain language of the statute, and "where that language is unambiguous, we presume that the Legislature intended the meaning clearly expressed and enforce that statute as written." *People v. Holder*, 483 Mich. 168, 172 (2009). "[O]nly where the statutory language is ambiguous may we look outside the statute to ascertain legislative intent." *Id*.
>
> The statute proscribing child sexually abusive activity provides:
>
>> A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, *or a person who arranges for, produces, makes, copies, reproduces, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, copy, reproduce, or finance any child*

> *sexually abusive activity* or child sexually abusive material for personal, distributional, or other purposes is guilty of a felony, punishable by imprisonment for not more than 20 years, or a fine of not more than $100,000.00, or both, if that person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child. [MICH. COMP. LAWS § 750.145c(2)] (emphasis added).

Thus, among the types of conduct expressly proscribed by MICH. COMP. LAWS § 750.145c(2) is "arrang[ing] for ... or ... attempt[ing] or prepar[ing] or conspir[ing] to arrange for ... any child sexually abusive *activity* or child sexually abusive *material*...." (Emphasis in Opinion.) MICH. COMP. LAWS § 750.145c(1)(n) defines "child sexually abusive activity" as "a child engaging in a listed sexual act." "Child" means "a person who is less than 18 years of age." MICH. COMP. LAWS § 750.145c(1)(b) and MICH. COMP. LAWS § 750.145c(6). A listed sexual act is defined to include "sexual intercourse, erotic fondling, sadomasochistic abuse, masturbation, passive sexual involvement, sexual excitement, or erotic nudity." MICH. COMP. LAWS § 750.145c(1)(i). The statute provides a separate definition for "child sexually abusive material." See MICH. COMP. LAWS § 750.145c(1)(o). This Court has recognized that MCL 750.145c(2) applies to three distinct groups of persons. *People v. Adkins*, 272 Mich. App. 37, 40 (2006). The first category includes a person "who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material...." MICH. COMP. LAWS § 750.145c(2); *Adkins*, 272 Mich. App. at 40. This category refers to those who are engaged in the production of pornography. It is undisputed that defendant does not fall within this group. The second category includes a person who "arranges for, produces, makes, copies, reproduces, or finances ... any child sexually abusive activity or child sexually abusive material...." MICH. COMP. LAWS § 750.145c(2); Adkins, 272 Mich. App. at 41. The last category is defined to include a person "who attempts or prepares or conspires to arrange for, produce, make, copy,

8

> reproduce, or finance any child sexually abusive activity or child sexually abusive material...." MICH. COMP. LAWS § 750.145c(2); *Adkins*, 272 Mich. App. at 41. The use of the disjunctive "or" in the second and third categories clearly and unambiguously indicates that persons who arrange for or attempt or prepare to arrange for child sexually abusive activity face criminal liability. See *Adkins*, 272 Mich. App. at 41. "The Legislature thus omitted from the second and third groups subject to criminal liability any requirement that the individuals therein must have acted for the ultimate purpose of creating any child sexually abusive material, a specific requirement applicable to the first group of criminals." *Id.* at 42. Accordingly, we reject defendant's argument that MICH. COMP. LAWS § 750.145c is limited to conduct involving the production of sexually abusive material. The allegations against defendant squarely place him within the group of persons on whom MICH. COMP. LAWS § 750.145c(2) imposes criminal liability.

*People v. Willis*, 914 N.W.2d 384, 387–88 (Mich. Ct. App. 2018).

The court went on to find that sufficient evidence was presented to establish beyond a reasonable doubt that Petitioner engaged in child sexually abusive activity with the complainant:

> Turning to the sufficiency of the evidence to support defendant's conviction, we conclude that, viewed in a light most favorable to the prosecution, the evidence was factually sufficient to show that defendant arranged for, or attempted to arrange or prepare for, child sexually abusive activity with the 16-year-old victim. The evidence showed that the 52-year-old defendant invited the 16-year-old victim into his apartment, showed the victim a pornographic video of two men engaging in sexual intercourse, offered the victim $25 to allow defendant to insert his fingers into the victim's anus while he masturbated, and later offered the victim $100 to engage in sexual intercourse. This was sufficient for a rational trier of fact to find that the essential elements of child sexually abusive activity were proved beyond a reasonable doubt. As discussed earlier, the prosecution was not required to prove that defendant's conduct involved the production of child sexually abusive material.

9

*Willis*, 914 N.W.2d at 388.

The legal premise on which Petitioner's first, third, and fourth claims is based rests on an interpretation of a state statute that the crime of child sexually abusive activity requires proof of a purpose to produce child sexually abusive material. That construction of the statute was rejected by the state court purely as a matter of state law. The court's rejection of that premise is binding on this court and is also dispositive of Petitioner's claims; what is essential to establish an element of a crime is a question of state law for which federal habeas review is not available. *See Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002); *Jenkins v. Dailey*, 348 F. App'x. 114, 119 (6th Cir. 2009). Rather, a federal habeas court must defer to the Michigan Court of Appeals' construction of the elements of state crimes. *See Coe v. Bell*, 161 F.3d 320, 347 (6th Cir. 1998). "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citation omitted). State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (citation omitted).

Accordingly, the prosecutor was required to prove—and the trial court was required to instruct the jury—only on the elements of the offense as defined by the Michigan Court of Appeals. These elements include that the defendant arranged for, or attempted to arrange or prepare for, child sexually abusive activity. Michigan

state law defines child sexually abusive activity as "a child engaging in a listed sexual act." Mich. Comp. Laws § 750.145c(1)(n). "Child" means "a person who is less than 18 years of age." Mich. Comp. Laws § 750.145c(1)(b). A listed sexual act is defined to include "sexual intercourse, erotic fondling, sadomasochistic abuse, masturbation, passive sexual involvement, sexual excitement, or erotic nudity." Mich. Comp. Laws § 750.145c(1)(i).

Here, as reasonably found by the Michigan Court of Appeals, and viewing the evidence most favorably to the prosecution, constitutionally sufficient evidence was presented at trial to show that Petitioner attempted to arrange or prepare for child sexually abusive activity as defined by state law. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The complainant testified that he told Petitioner that he was sixteen years old, that Petitioner lured him into his apartment, and that Petitioner offered to pay him to engage in sexual acts. This testimony, if accepted by the jury beyond a reasonable doubt, satisfied the elements of child sexually abusive activity as defined by state law.

In his fourth habeas claim, Petitioner argues that the trial court failed to instruct the jury on the requirement that Petitioner acted with the purpose to produce child sexually abusive material. ECF No. 10-15, PageID.1120–21. A habeas petitioner must show not only that a challenged jury instruction was erroneous, but also that it so infected the entire trial that the resulting conviction violates due

process. *Estelle v. McGuire*, 502 U.S. 62, 75 (1991). Here, the Michigan Court of Appeals found that the purpose of producing child sexually abusive material was not a required element of the crime. As the jury instructions correctly omitted the disputed element, this fourth claim is therefore also without merit.

Accordingly, the Court concludes that Petitioner's first, second, and fourth habeas claims are without merit.

### B. Judicial Bias

Petitioner's third habeas claim asserts that the trial court was biased against him. He primarily relies on an exchange occurring during the testimony of a police witness for this claim, but he also asserts that the court's rulings on various objections throughout trial indicated that it was partial to the prosecutor. With respect to the primary assertion, on cross-examination of the police witness, defense counsel challenged the officer's assumption that Petitioner was not permitted to be near schools under the sex offender registration act.[1] The complained-of exchange ran as follows:

> [Defense Counsel]: And one of the things you were concerned about is if he could be alone with a minor, correct?

---

[1] At the time of the instant offense, Petitioner had just completed his parole term from his 2002 conviction for two counts of first-degree criminal sexual conduct related to his conduct with a person under thirteen years of age. ECF No. 10-17, PageID.1174–75.

[Sergeant Kapanowski]: I believe it was a CSC under thirteen year old, so, yes, I was concerned whether or not he could have children in the residence as well as be close to schools and difference stipulations.

[Defense Counsel]: In the video you didn't say anything about being close to schools, correct, that we heard?

[Sergeant Kapanowski]: No, but that's part of the sexual offender registry. That's what I was assuming, too. I was thinking, I should say.

[Defense Counsel]: Thank you. And when you made that assumption were you saying…

The Court: What assumption?

[Defense Counsel]: What he just said, the assumption about him not being able to be near minors or be around schools.

[Defense Counsel]: Whatever assumptions you made, okay, did you later come to find out after you arrested Mr. Willis that you were wrong?

The Court: That's beyond that, Miss Diallo.

[Defense counsel]: Okay.

The Court: Hold on, one second. Okay. I just want to say that Michigan Rule Evidence 6.11 says that the Court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence. So as to, one, make the interrogation and presentation effective for the ascertainment of the truth; two, avoid needless consumption of time as applies here. So that was the reason for my limiting this to what was on the video and that's my reason for stopping that last question.

ECF No.10-15, PageID.1025–27.

Petitioner asserts that by cutting-off a legitimate area of questioning, the court belittled defense counsel and denigrated the defense. The Michigan Court of

13

Appeals reviewed and rejected this claim on the merits, and it determined that Petitioner was not denied his right a fair trial before an impartial judge:

> The trial court's remarks were not of such a nature as to unduly influence the jury. The record shows that the trial court appropriately exercised its discretion to control the trial to prevent improper questioning of the sergeant and avoid wasting time. Before the sergeant took the stand, the parameters of his testimony were discussed. On the basis of the parties' agreement, the trial court allowed a portion of a video recording from the sergeant's squad car that depicted a conversation between the sergeant and the victim. The sergeant's testimony was limited to what transpired on the recording. Defense counsel, however, sought to ask the sergeant whether his assumption that defendant could not be around schools was incorrect. Similar testimony was previously placed before the jury at trial when a detective testified that it was not correct that defendant could not be around schools. Thus, the trial court evidently prevented further exploration on this matter because it was outside the scope of the trial court's ruling regarding the sergeant's testimony, irrelevant to the proceedings inasmuch as defendant was not charged with violating SORA, and repetitive. Defendant has provided no explanation, argument, or authority indicating how the evidentiary objection was improper and not in accordance with MRE 611(a). Instead, defendant focuses on the trial court "reading from a court rule" and the "tone and demeanor" in which the trial court recited the court rule, but defendant fails to also observe that defense counsel's behavior of ignoring the court's ruling very likely necessitated the court's reference to MRE 611.
>
> Before defense counsel's question that prompted the trial judge's reference to MRE 611, the trial court had interrupted defense counsel, noting that her questions about the sergeant's training were "beyond the redirect." In an apparent effort to continue, defense counsel stated, "Well, no, Judge, I understand that, but they never produced this witness." The trial court explained that defendant may call the sergeant as a defense witness but that her question was "beyond what we've gone into and what I said you should do or could cover on re-cross." Thus, the trial court's specific mention of MRE 611 occurred after the trial court had already cautioned defendant about the limitations on

14

>cross-examination. Yet defense counsel chose to question the sergeant on a matter that was outside the trial court's ruling. Considering the totality of the circumstances, the trial court's reading of MRE 611 was not calculated to cause the jury to believe that the court had any opinion regarding the case and was not likely to unduly influence the jury to defendant's detriment. Rather, it appears that the trial court was merely explaining its interruptions and was not intending to belittle defense counsel. Moreover, the trial court instructed the jury that the case must be decided only on the evidence, that its comments and rulings were not evidence, that it was not trying to influence the vote or express a personal opinion about the case when it made a comment or a ruling, and that if the jury believed that the court had an opinion, that opinion must be disregarded. Accordingly, to the extent that the trial court's conduct could be deemed improper, its instructions were sufficient to cure any error. *Stevens*, 498 Mich. at 190.

*People v. Willis*, 914 N.W.2d 384, 389–92 (Mich. Ct. App. 2018).

"[T]he Due Process Clause clearly requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) (internal quotation marks and citation omitted). Indeed, an impartial judge is a necessary component of a fair trial. *In re Murchison*, 349 U.S. 133, 136 (1955). The Supreme Court established the standard for assessing claims of judicial bias in *Liteky v. United States*, 510 U.S. 540 (1994). A judge's remarks that are "critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555.

Here, the Michigan Court of Appeals did not unreasonably apply this clearly-established standard. As noted by the state court, the trial judge's interruption was

based on its earlier ruling that limited cross-examination to matters covered by the court's earlier ruling. Whether that prior ruling was correct or not, the trial court's comments did not evidence bias or partiality–it was rather a statement in keeping with its prior order. Petitioner points to nothing other than rulings like this one to support this claim. Importantly, however, "judicial rulings alone almost never constitute a valid basis" for a claim bias or partiality. *Id.*

Moreover, to the extent the rulings suggested that the trial court had an opinion regarding the merits of the prosecution, this Court takes notice that the state court instructed the jury to disregard them and to not allow any comments or rulings influence deliberations. ECF No. 10-15, PageID.1114. A jury is presumed to follow such instructions. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). This Court finds that Petitioner has offered no reason to believe that this presumption should not apply here, or that it was objectively unreasonable for the Michigan Court of Appeals to rely on it. Accordingly, Petitioner's third habeas claim is without merit.

In sum, because Petitioner has not demonstrated entitlement to habeas relief with respect to any of his four claims, this Court will deny his petition.

### C. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). In order to obtain a certificate of appealability, an applicant must make a substantial showing of the denial of a

constitutional right. *Id.* To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this Opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002). Moreover, the Court will also deny petitioner leave to appeal *in forma pauperis* because the appeal would be frivolous. 28 U.S.C. § 1915(a)(3); *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V.  CONCLUSION

Based upon the foregoing, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED.**

**IT IS FURTHER ORDERED** that leave to appeal *in forma pauperis* is **DENIED**.

    **SO ORDERED.**

Dated:  November 16, 2020

                                          <u>/s/Gershwin A. Drain</u>
                                          GERSHWIN A. DRAIN
                                          United States District Judge

CERTIFICATE OF SERVICE

A Copy of this Order was served on Kelvin Willis, No. 423665, Chippewa Correctional Facility, 4269 W. M-80, Kincheloe, Michigan 49784 on November 16, 2020, by electronic and/or ordinary mail.
                        <u>/s/ Teresa McGovern</u>
                          Deputy Clerk